Case number 080713, People v. Eddie Meeks. My name is Grace Palacio and I represent the defendant, Eddie Meeks. Could I have your name again? I'm sorry. Grace Palacio. Good morning. Assistant State's Attorney, Hugo, who is on behalf of the people of the state of Illinois. Thank you. Ms. Palacio, you may proceed when you're ready. Mr. Meeks' opening brief raised three issues, but for purposes of this oral argument, I'll be focusing my discussion on argument two. Whether Mr. Meeks was denied the right to a fair and impartial jury when, during voir dire, the trial judge judged laws, punished a prospective juror who expressed his bias by ordering him to return to court to watch trial and then threatened him with arrest if he failed to do so. Unless this court has any questions regarding the other two issues, the defense will stand on the opening and reply briefs on those matters. At 5 after 12 in the afternoon, far be it from any of us. I will reserve three minutes for rebuttal. This is a case of second impression. Just last year, this court decided in Pupil v. Brown a very similar issue involving the very same judge, Judge Laws, where she... And aren't you lucky to have the dissenter evidently on this panel. I am. Judge Laws in Brown. Incidentally, this is the Justice Gordon who dissented. I'm not saying I wouldn't have, but I wasn't on that panel. Judge Laws in Brown similarly punished a prospective juror who expressed bias by likewise ordering that juror to return to trial in order to watch it so he could get an education on the system. This court uniformly condemned her behavior, saying that it was unnecessary and improper, but ultimately... Well, one judge said it was unnecessary, but he didn't say it was improper. Justice Wolfson did not say it was improper. He said it wasn't error. He said it wasn't error to reach it. Right. Justice Garcia, in the majority opinion, said that it was improper. But not prejudicial. Right. Well, Justice Wolfson did say that it shouldn't have happened. He at least agreed on that part. So the court, while it condemned... We know why these things happen. It's not necessarily an indication of any kind of ulterior or improper motivation. It's an improper implementation. Trial judges are always concerned about the fact that jurors should not be able to find an easy avenue from which to walk away from the jury. Right. And they're concerned about it, and that's what leads to this kind of behavior. Right. So do you have to show in this case that the defendant was then prejudiced by this action that the judge took? Well, I would argue that, yes, he was prejudiced, but also argue that, you know, the error here was to such an extent, the right here, the import of the right and the gravity of the error is to such an extent that it's plain error. But getting to that, don't you then have to show under this plain error that you were somehow prejudiced? Don't you have to show that in order for us to conclude that it was plain error? I think that the error is such and the harm is such that I don't think that a record can ever fully show what prejudice resulted. But I think... You thought it was the burden was on you under this plain error to show that you were indeed harmed by this. Well, I think you could say that Mr. Meeks was harmed by it. Well, what if the jurors, I mean, there were a lot of jurors in this case that were before and after this incident with the particular juror here that indicated that they couldn't be fair. Right. There were some that the remarks were just abundant on different reasons why these people couldn't be fair. Now, whether they were being truthful or whether they were being just trying to get out of this, I mean, which is what a lot of people do. Right. The record reflects that there were a number of jurors that were openly, candidly telling the court that they couldn't serve in a capacity and be fair. And a number of them were excused by the defendant for cause, and the court granted that. And then others were excused preemptorily. So how are you showing that this actually impacted the fairness of the jury's deliberations? Well, I think having those individuals come up and speak about their potential biases only speaks to their potential biases. It doesn't speak to whatever potential biases the jurors who were actually set may have had. Don't you have to show us, though, that somehow this did occur? Can we speculate that it occurred, or do you have to establish that it occurred? In fact, in the Brown case, wasn't that part of the problem? It wasn't another part of the problem in Brown that lawyers were not given a crack at the voir dire. It was all by the judge, while in this case the lawyers had their own opportunity to question without apparently any restriction. Well, as the dissent speaks to that in Brown, allowing the defense counsel, and Mr. Meeks in this case, to question the jurors does not necessarily cure the problem, because the fact that it was the judge herself who made the error to therefore then ask the potential jurors if what she said intimidated them is not likely to get an answer of, yes, she intimidated me, because if they're already intimidated. Well, maybe that's why it's not an advisable practice. But the question is whether it's reversible error, whether it rises to that magnitude. And I think it does, because I think in cases like this where you're dealing with the potential biases of jurors who are going to sit and decide the fate of this defendant, you need to side on the harm probably harmed the defendant. You need to resolve the error and the harm in favor of the defendant. But that's not the plain error rule. That's not the plain error rule. But what I'm saying is that this was such an egregious error that it could have affected this substantial right. Well, your position is that the plain error rule should be modified for judicial error because of the hesitancy of counsel to object and, consequently, should be more indulgently received, rather than look for an error of structural magnitude if the evidence is not otherwise close. Is that right? Well, there's a leniency in the sense when it's the error of the court, that, yes, we will relax the rules in that sense. But also I would maintain that this error in which the judge laws did was so egregious that even if it's not in the record, I think we can presume that there was some sort of prejudice to the client because not only did she chastise this juror, order him to come back, she even threatened him with arrest, which is far more egregious than what happened in trial. She didn't threaten him with arrest for expressing his bias. No. But for his attempt, the possibility that she wouldn't follow his directive to appear. Isn't what really happens when a judge does this is that they intimidate the jury to such an extent that the jury is so frightened that they do not want to even answer any of these questions for the fear that they, too, will be placed in the same position as the juror. Some of the comments, though, really dispel that notion, this particular record. Now, here we have judge laws, and she's, you know, talking to these jurors, and one of the jurors said that they couldn't be fair because the defendant was black. Now, I don't think that that indicates any fear at all. And another defendant asked that, or another juror said she could, she didn't know if she could remain unfair because she used to live next door to some lesbians. The kinds of comments that were coming out of these jurors, to me, not only speaks of their, well, I mean, I just, I can't believe that these people were in fear when they were making racist comments, when they were making comments that were suggesting a bias because of someone's sexual orientation. So I don't see any fear on the part of these jurors. In fact, they were, it appeared that they were being, I mean, I don't know, were they lying about this? Were they just trying to get out of jury duty? Were they, did they feel they could be so outrageous and say things simply to get out of jury duty? Or were they being candid? So I don't know that this record is demonstrating that they were inhibited. It appears that they weren't inhibited, and they weren't placed in fear because of their comments. Again, I would say that that speaks. The burden of persuasion is on you under the plain air to show that this deprived him of a fair trial. Well, I think when you don't have a frank, or if there's any kind of indication that there might be fear with the jurors, that if you don't have a frank exchange between the potential jurors and the questioner, that that needs to be avoided. This court has stated that needs to be avoided. Well, does that mean that a judge, a trial judge has to tolerate any evasive kinds of responses that are clear on their face to be designed to avoid jury service? No, absolutely not. It's certainly within the judge's right. But you would think it should be done in camera rather than a court. Right. As a Brown decision says, there are different ways that the judge can go about this. And let's face it, juries are picked every day. This is only a case of second-degree murder. Supposing you have a recalcitrant teenager saying, you can't make me judge. At that point, would there be any concern about the judge chastising that juror in front of everyone else? It might be a good thing, as a matter of fact, because while you want to chastise, you don't want to encourage improper conduct. So wouldn't it depend, in a sense, on the factual situation itself, on the demeanor of the juror, if the juror was obviously faking it? At least where the judge was real. Would that risk of contamination be as great under those circumstances? Or is a jury smart enough to know that this guy is a smart aleck, and consequently, if I'm sincere, I don't have to worry? I think that is certainly a possibility. But in that example, the error is with that potential juror. And the error we're talking about here is what the judge chose to do by imposing some kind of punishment on a potential juror. That's what instills fear. Well, coming to watch a jury proceeding is not putting him in shackles, exactly. And it's simply telling him to do that which he would be required or she would be required to do if she was selected for the jury. But no one is debating the point that this is improper conduct. And, in point of fact, it was the same judge that was involved in the Brown case. But she hadn't gotten the message yet because that decision hadn't reached her at this point. And don't you think that would be enough of a deterrent if you told a judge and someone that doesn't have any particular black marks against them, that that's not the right thing to do, that it would deter that kind of conduct? Well, it could deter in the sense that the court denounced that behavior. But there really was no remedy for the defendant in Brown. The court found harmless error. Yeah, but that remedy would only – The court didn't find harmless error. It was a plain error. It was forfeited. But that remedy is really not invoked here because no one is questioning that this error was not sufficiently prejudicial. What you're trying to make out of it is a constitutional structural defect. And that would, I think, require a bit more than simply the fact that a judge is doing something that is ill-advised. But I think in Brown, the court made clear that the difference between Brown and, say, for example, the federal Roe case was a difference in degree and kind. And what the Brown court said was Judge Law's actions in Brown while ordering the juror to return just did not reach the level of penalty that was found in Roe. And we're not saying that what happened in Roe is what happened here, but surely what happened here by chastising this juror, embarrassing him, pointing him out to the rest of the jury, and then ordering him to come back and threaten with arrest if he doesn't come back, that certainly falls closer to the penalty that was invoked in Brown where it was simple chastisement and then ordering the juror to come back. This error that Judge Law's made was such that it certainly could have intimidated a juror who was afraid to be candid for fear of being reprimanded. And I agree with you. I agree that it definitely could chill the juror's ability to be frank and honest. But under this plain error analysis, don't you have to show us on the record how? Don't you have to show us that that occurred? Can we speculate that that occurred when we have these remarks of these other jurors that could clearly indicate that they were not chilled in their responses because of what they said in open court? Well, we would have to speculate generally. And I think the fact that in this case the jury seemed to be a bit torn. They acquitted on one count but convicted on the other. What does that mean? The defendant represented himself pro se. They found him not guilty on the attempt to murder. They found him guilty of aggravated battery of the one victim, Miss, I forget her name. In any event, she was stabbed in the abdomen and her liver and something else was severed. She spent six days in the hospital. So, I mean, the jury, I don't know if you'd say that was torn or that they established that the state had not proved specific intent to kill her. The unreasonable doubt. I mean, that's really what I think the jury did. Right. Well, who's to say that maybe they found him to be persuasive? And who's to say they wouldn't have acquitted him of both? But the problem is we are speculating and we shouldn't have been put in the position where because of Judge Law's out-of-bounds comment that we have to speculate on whether or not there was any bias on the jury. What she did was unacceptable. This right is a bedrock of the judicial system. Every defendant who has a jury trial is entitled to a fair and impartial jury. And the fact that she did this, that she threatened this kind of arrest, this kind of punishment, puts into question whether or not he actually received that right. No, I don't think it puts that into question because that question is resolved through a harmless error analysis. And this is not a question of harmful error because it passes muster under a harmful error analysis. Here the question is whether it's of structural magnitude. But no one is imposing on the defendant to bear the burden of judicial misconduct which is determined to have had a prejudicial outcome. All right. So I would just make it that this error, this Judge Law's error here, was so egregious and despite it's so important that we should find that, A, it wasn't forfeited, and, B, that it was plain error which denied him a fair trial. It denied him an impartial jury and, therefore, a fair trial. So Mr. Meeks asks that this court reverse his conviction and remand for a new trial. Thank you, counsel. Assistant State's Attorney, Hugo Bouzy, representing the people of the State of Illinois. May it please the Court, defendant in this case forfeited this argument by failing to preserve it either during jury selection by objecting or in his post-trial motion. Furthermore. Not if it's an error of first magnitude. I'm sorry, Your Honor? Not if it's an error of structural magnitude. That's correct, Your Honor. However, we'd argue that. No one is urging here that the evidence is close. As Your Honor pointed out, this is not a structural issue here. This is an issue where the defendant forfeited this issue and it's not a reasonable and a plain error because the defendant could not show that he was prejudiced, as Justice Wright alluded to earlier. Defense counsel. Okay. Brown, the Court, at least indicated that this was of the nature of a structural error so that it would consider first whether it was. To get to plain error, it has to find an error. But they basically concluded, at least Justice Garcia said it was a structural error. That's why he got to it. But then once you get to that point, you have to, the defendant does have to show that they were prejudiced by the error that occurred. Correct, Your Honor. And as in Brown, the defendant here was not prejudiced. Defense counsel has asked you to look at what could have happened. Well, how do we know that the defendant wasn't prejudiced? I mean, well, I think, wouldn't this automatically have a chilling effect on the jurors? I think, some of them at least? I think Your Honor pointed it out during counsel's argument. When one looks at the record, one sees that the respective jurors clearly were not in fear. You had many jurors making many of what I would consider, I guess, bold assertive statements as to why they would be biased. That's an error in logic that scientists will do battle with. Just because there are some who weren't intimidated, doesn't mean that none were intimidated. Certainly, Your Honor. Or just because some weren't intimidated to a degree, doesn't mean that all or any weren't intimidated to a lesser degree. Certainly, Your Honor. However, I think when one looks at the record, given the statements made by the respective jurors regarding their bias, after this punishment occurred, it's clear that those jurors were not intimidated. Moreover, the fact that those jurors, despite some of their outlandish comments, were not punished. Well, but doesn't this show full and frank response? Let's say they're not intimidated to the extent that they're going to express a prejudice, but are they going to ventilate the fact that they have some difficulty, which they might be able to overcome? And isn't that kind of ventilation valuable in jury selection? Even to get a juror who says, yes, I can be fair, but to tell us why there might be shadows or ghosts that could prevent full fairness, doesn't it help him to become more fair when he resolves to be fair once he's given a chance to ventilate? And doesn't this chill that opportunity? Well, Your Honor, I think that certainly the purpose of WIDEAR is to find these biases. And as I was saying, I think you're not going to do it if you're going to jump down a juror's throat when a juror comes out and says that, yes, I'm biased. But when we look at the record, the fact that after that you had several jurors who said, I'm going to be biased or I can't be unbiased, I should say, and nothing happened to them, that further reassures those jurors that didn't say anything the fact that, well, you know what, those people who made much more outlandish comments than the initial juror, they're not being punished. Well, his comments, I don't know if you, the judge apparently thought that they were not appropriate to disqualify him, but he basically said he was going through a divorce and, I don't know, he said he was blaming everything on his wife and he didn't think he could be fair. So I don't know. I mean, that was the juror the judge singled out, the one that came up with this statement, that I don't think I can be fair because I'm going through a divorce right now. And he was under a lot of stress. But she thought that, you know, that wasn't a legitimate. It could also be a ploy that a trial judge will use only once to set the line and then hope that everyone reads the message to inhibit blatant attempts to avoid jury service. But how much more will it inhibit besides that is the question, which is why everyone agrees that it shouldn't be done. The question is, what's the consequence once it's done? And the majority, at least in Brown, seem to feel the harmless error analysis is sufficient to preclude reverse. Well, Your Honor, but I think going back to Brown, I think Brown poses the correct question here, as Justice McBride alluded to earlier, is that the issue here is whether the defendant can show that he was prejudiced by this, not whether he may have been, and not whether, as the Senator Defense Counsel suggested, this could have had an effect on the jury. Well, in point of fact, however, judges probably, I would think, there may be some question about their inherent power, but I would think that judges do not have the power to compel someone to come back, that that's probably ultra-virus, absent their exercise of their contempt powers, if there is actually conduct that obstructs the course of the trial sufficiently to warrant contempt. But absent contempt, I don't think that judges have the inherent right to order anybody to do anything once they're disengaged from the jury, so that when a judge does do it, and it has a deleterious impact, the question of reversibility is not far-fetched. Your Honor, but the burden under the plain error analysis still lies with the defendant to show that they were prejudiced. Here, the record, when looking at the record, there's nothing to indicate that there was actual prejudice here. Nothing to indicate that the jurors that were selected were actually biased, much like we had in Brown. This case is, as was stated earlier, very similar to Brown in that it was the same judge, and a similar situation occurred here. But like in Brown, the error was not preserved. The plain error does not apply. Did she suggest that a warrant would be issued for the arrest of the juror in Brown? No, not, Your Honor. The one difference here is that here the judge selected that should the juror not appear, she could issue, not that she would, but that if you were not to appear. Was there anything inaccurate about her statement that if you don't come back tomorrow, I can issue a warrant for your arrest? Is there anything? Well, I guess if you take Justice Gordon's view, that she has no right to any, arguably, any right to do anything with a juror who appears to be prejudiced. There may be some inherent authority that, To her manager courtroom and whatever. There's someone to her room to answer questions, to be put to them for jury service. But is there something, was there something, putting that aside, was there something improper about her saying that if you don't come back tomorrow, you know, I can issue a warrant for your arrest? Your Honor, I don't know that I can answer that question for you. Again, as Justice Gordon suggested, there may be an inherent power to do that. I don't know, but the issue here, though, is that once again, that there is no evidence on the record that the jurors that were selected were biased. And absent that, this issue is not reviewable under plain error. The defendant has failed to meet that burden. And therefore, we would argue that this court should affirm the defendant's conviction. Basically, we would argue that Brown is dispositive in this case. If there are no more further questions. Thank you, Your Honor. Just a couple of quick points. First, I would dispute that this issue has been forfeited. I think the waiver rules are relaxed when it's the conduct of the court that's an issue. And here, the Brown court, and even the justices here, have alluded that, you know, this was the error of the judge. So we can't expect that a defense counselor, Mr. Meeks in this case, would have had the wherewithal to object to that particular error. So in that case, no, it's not forfeited on those grounds. And then, once again, I would argue that this is plain error. The error was so egregious, and it affects such a substantial right, and it calls into question the fairness of the trial. But yes, it's plain error, and the judge should find so. Thank you. Thank you. This case was well argued, and will be taken under advisement. And the court will stand adjourned.